# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

In re

CASA de CAPRI ENTERPRISES, LLC
dba Capri at the Pointe Rehab,

Debtor.

Chapter 11

Case No. 2:13-bk-14269-EPB

**ORDER (A) APPROVING SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (B) APPROVING THE SALE OF THE LEASEHOLD FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (C) APPROVING THE ASSET PURCHASE AGREEMENT; AND (D) GRANTING RELATED RELIEF**

Hearing Date: September 18, 2013
Hearing Time: 9:00 a.m.
Location: Courtroom #703
 230 N First Ave
 Phoenix AZ  85003

The Court has considered Casa De Capri Enterprises, L.L.C. ("**Debtor**"), debtor and debtor-in-possession's, *Motion for an Order (A) approving sale of Debtor's assets free and clear of liens, claims and encumbrances; (B) approving the sale of the leasehold free and clear of liens, claims and encumbrances; (C) approving the assets purchase agreement; and (D) setting date and time for hearing on proposed sale* (the "**Sale Motion**"), which requests an order, among other things, (a) authorizing and approving that certain Asset Purchase Agreement by and among Debtor, Legacy Senior Housing and Development, L.L.C., the owner of the Leasehold (together with Debtor the "**Sellers**"), and Pointe Healthcare, L.L.C., as Purchaser (including all related exhibits and schedules, the "**APA**")[1] A copy of the APA, as amended and supplemented, was attached to the *Notice of Filing*

---

[1] Except as otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the APA.

*Amended Purchase Agreement with Completed Schedules* (DE #81), and is further amended by the Second Amendment, which is attached to this Order as Exhibit 1. The APA provides for, effective as of Closing on the Closing Date, Debtor's sale, conveyance, assignment, transfer and delivery of the Facility, including, without limitation, the Leasehold each as identified in the APA to Purchaser (the "**Acquired Assets**") all free and clear of all liens, claims, encumbrances and interests (the "**Asset Sale**"), and (b) authorizing and approving the assumption and assignment of certain unexpired leases and executory contracts identified on Schedule 3.9 to the APA ("**Assigned Contracts**"); and initial notice of the Sale Hearing having been given on August 21, 2013 (DE #27); and Debtor having determined that Purchaser has submitted the highest or otherwise best bid for the Acquired Assets pursuant to the APA; and a sale hearing having been held on September 18, 2013 in connection with the Sale Motion (the "**Sale Hearing**"); and adequate and sufficient notice of Sale Hearing, the APA and all transactions contemplated thereunder, and this Order having been given in the manner directed by the Court; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the matters raised by the Sale Motion and relief related thereto; and the Court having reviewed and considered the Sale Motion and any objection thereto, and the arguments of counsel, and *Purchaser's Declaration in Support of Finding of Good Faith Pursuant to 11 USC Section 363(m)* (DE# 84) and the exhibit to Purchaser's Declaration (DE# 86) (together with DE# 86 "**Purchaser's Declaration**") and the evidence proffered or adduced at the Sale Hearing; and it appearing from the affidavits of service filed with the Court that due and sufficient notice of the Sale Motion, the Sale Hearing and the relief sought in connection therewith have been provided to all parties in interest; and it further appearing that no other or further notice thereof is required; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, creditors, and other parties in interest; and after due deliberation and good and sufficient cause appearing therefore, this Court hereby makes the following Findings of Fact and Conclusions of Law:

## **FINDINGS OF FACT:**

IT IS HEREBY FOUND AND DETERMINED THAT:

### **Jurisdiction, Final Order And Statutory Predicates**

2

Case 2:13-bk-14269-EPB    Doc 99    Filed 09/20/13    Entered 09/23/13 07:36:20    Desc
DB04/0836902.0002/9529086.5 DD01    Main Document    Page 2 of 15

A. The Court has jurisdiction to hear and determine the Sale Motion, and to grant the relief requested therein, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of Debtor's chapter 11 case and the Sale Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409(a).

B. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C. The statutory predicates for the relief sought in the Sale Motion include, without limitation, Sections 105(a), 363(b), (f), (l), and (m) 365(a), (b), (f) and (k) of the Bankruptcy Code, and Rules 2002, 6004 and 6006 of the Bankruptcy Rules.

### Retention of Jurisdiction

D. It is necessary and appropriate for the Court to retain jurisdiction as provided in the APA to, among other things, interpret and enforce the terms and provisions of this Order, the APA, and to adjudicate, if necessary, any and all disputes involving the Debtor concerning or relating in any way to, or affecting, the Asset Sale or the transactions contemplated in the APA, and related documents.

### Notice of the Sale Motion

E. As evidenced by the affidavits of service and publication previously filed with this Court and based on representations of counsel at the Sale Hearing (i) due, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, and the Asset Sale has been provided in accordance with the Bankruptcy Code and Bankruptcy Rules, (ii) such notice was good and sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Sale Motion, the APA, the Sale Hearing, or the relief sought with respect thereto is required.

### Resolution of Objections to Motion and Consents

F. The United States Trustee's Office and the Official Unsecured Creditors' Committee previously filed objections to the Sale Motion. Each of Alliance Laundry Systems, LLC, Michelle Anderson and Fay Enterprises, Inc. filed a limited objection to the Sale Motion. Based upon agreements reached with such parties at the Sale Hearing and incorporation of such terms into this Order and the Second Amendment to the APA attached hereto as Exhibit 1, these objections have been

resolved and the United States Trustee's Office and the Official Unsecured Creditors' Committee have announced in open court their support of the granting of the Sale Motion.

G. Apheresis Care Group, Inc. d/b/a Phoenix Metro Inpatient Services ("**Apheresis**") has also filed an objection. Based upon agreements reached with Apheresis pursuant to the Sale Hearing, including additional consideration paid by Purchaser for the Acquired Assets and other concessions as incorporated into this Order and the Second Amendment to the APA attached hereto as Exhibit 1, this objection has been withdrawn.

### Sound Business Purpose for the Sale

H. Good and sufficient reasons for approval of the APA and the Asset Sale have been articulated. The relief requested in the Sale Motion is within the reasonable business judgment of the Debtor, and is in the best interests of the Debtor, its estate, its creditors and other parties in interest.

I. The Debtor has demonstrated both (i) good, sufficient, and sound business purpose and justification and (ii) compelling circumstances for the entry into the APA and the consummation of the Asset Sale pursuant to section 363(b) of the Bankruptcy Code, in that, among other things, the immediate consummation of the Asset Sale, and the assumption and assignment of the Assumed Contracts, to Purchaser is necessary and appropriate to maximize the value to Debtor's estate and the Asset Sale and to protect the interests of the residence of the Facility.

### Auction

J. The Court conducted an Auction at the Sale Hearing on September 18, 2013. The Auction was duly noticed and conducted in a noncollusive, fair and good faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets. At the Auction the Purchaser raised its initial bid under the APA from $100,000 to $350,000. At the conclusion of the Sale Hearing, the Court approved the results of the Auction.

### Consumer Privacy Ombudsman

K. On September 13, 2013 the Court approved the appointment of Jerry Seelig as Consumer Privacy Ombudsman.

L. On September 18, 2013, at the Sale Hearing, the Consumer Privacy Ombudsman reported to the Court that the requirements of 11 U.S.C. § 332 have been met.

### **Good Faith of Purchaser**

M. As demonstrated by the representations set forth in the APA, Purchaser's Declaration and other evidence proffered or adduced at the hearing on the Sale Motion, Debtor and Purchaser negotiated the terms and conditions of the APA in good faith and at arm's length. Debtor and Purchaser were represented by counsel and other advisors during such arms length negotiations in connection with the APA and the Asset Sale. Purchaser is entering into the APA in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections afforded under section 363(m) of the Bankruptcy Code. Purchaser is not a successor in interest to the Debtor.

N. Purchaser is not an "insider" of the Debtor, as that term is defined in section 101 of the Bankruptcy Code. No officer or director or other insider of Debtor holds any interest in or is otherwise related to Purchaser.

### **Highest and Best Offer**

O. The APA constitutes the highest and best offer for the Acquired Assets.

P. Debtor's determination that the APA constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of Debtor's business judgment.

### **Validity of Transfers**

Q. The transfer of the Acquired Assets to Purchaser pursuant to the APA is a legal, valid, and an effective transfer of good and marketable title of the Acquired Assets and vests or will vest Purchaser with all of Sellers' right, title, and interest in the Acquired Assets as of the Closing Date free and clear of all liens, claims, encumbrances and interests, and pursuant to section 363(f) of the Bankruptcy Code.

### **Section 363(f) of the Bankruptcy Code is Satisfied**

R. Debtor may sell the Acquired Assets to Purchaser free and clear of all liens, claims, encumbrances and interests against Debtor or its estate or the Acquired Assets because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been or will

5

be satisfied. Greg Anderson has released all of his liens against the Leasehold, if any, and has further consented to the sale of the Facility, including, without limitation, the Leasehold, free and clear of all liens, claims, encumbrances and interests of Greg Anderson. Separately, Michelle Anderson has released all of her liens against the Leasehold, if any, and has further consented to the sale of the Facility, including, without limitation, the Leasehold, free and clear of all liens, claims, encumbrances and interests of Michelle Anderson with all such liens, claims, encumbrances and interests of Michelle Anderson to attach to the proceeds to be received under the APA, subject to the same priority and validity (and defenses and objections of Debtor and other parties in interest, if any, with respect thereto) as are presently existing against the Acquired Assets.

S.  All other holders of liens, claims, encumbrances and interests in each case, against Debtor or its estate or the Acquired Assets, and non-Debtor parties to any related agreements who did not object, or who withdrew their Objections, to the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Other holders of liens, claims, encumbrances or interests who asserted an Objection at the Sale Hearing, if any, fall within one or more of the other subsections of section 363(f) and are adequately protected by having their liens, claims, encumbrances or interests, if any, against Debtor or its estate or the Acquired Assets, attach to the proceeds to be received under the APA, subject to the same priority and validity (and defenses and objections of Debtor and other parties in interest, if any, with respect thereto) as are presently existing against the Acquired Assets in which they allege such a lien, claim, encumbrance and/or interest with the following exceptions: One, the first $100,000.00 of the proceeds from the sale are received by the Debtor's bankruptcy estate free and clear of all liens and superpriority claims. These funds are available exclusively for the administrative expenses of the estate incurred by the Consumer Privacy Ombudsman and the Official Committee of Unsecured Creditors. Two, secured claim creditor Apheresis Care Group, Inc. d/b/a Phoenix Metro Inpatient Services ("**Apheresis**") is hereby determined to hold an allowed secured claim against the Debtor as of the date of this Order in the principal amount of $603,030.12, plus any attorneys' fees, costs, and expenses that Apheresis has incurred in the Debtor's bankruptcy case [estimated to be not less than $15,000.00] ("**Apheresis Claim**"). Interest will accrue on the unpaid principal amount of the Apheresis Claim at the rate of

1.5% per month through December 18, 2013, and thereafter and at the rate of 2.5% per month. Except as modified herein, Apheresis will be entitled to all rights and remedies provided in any existing pre-petition loan agreement and other documents executed by the Debtor. In the event that it is not paid in full by December 18, 2013, Apheresis shall be entitled to an expedited hearing, on 7 days' notice, on any request to obtain relief from the automatic stay. The parties have agreed, and the Court orders, that no part of the lien that secures the amounts owed or owing to Apheresis is or shall be subject to avoidance under Chapter 5 of the Bankruptcy Code or otherwise.

**Assumption and Assignment of the Assigned Contracts**

T. Debtor has, to the extent necessary, satisfied the requirements of sections 365(b)(1) and 365(f) of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts, and shall upon assignment thereof on the Closing Date, be relieved from any liability for any breach thereof.

U. Purchaser has demonstrated that it has the financial wherewithal to fully perform and satisfy the obligations under the Assigned Contracts as required by section 365(f)(2)(B) of the Bankruptcy Code.

**Other Findings**

V. To the extent any Findings of Facts set forth above constitute a Conclusion of Law, the Court so concludes.

W. It is in the best interests of Debtor and its estate that the Asset Sale close as soon as possible and no reason exists for delay in the implementation of this Order.

**Reduction of Stay**

X. Good cause exists to reduce the stay of the effectiveness of this Order.

**CONCLUSIONS OF LAW**

Based on the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. To the extent any Conclusions of Law set forth below herein constitutes a Finding of Fact, this Court so finds.

## General Provisions

2. The relief requested in the Sale Motion is granted in its entirety and approved in all respects.

3. For the reasons set forth on the record at the Sale Hearing, any Objections to the Sale Motion and the relief requested therein that have not been withdrawn, waived, or settled, are denied and overruled on the merits with prejudice and may not be reasserted.

4. The terms and provisions of this Order shall be binding in all respects upon Purchaser, Debtor, its estate, creditors, members, managers and shareholders of the Debtor, Legacy, creditors of Legacy that have consented to the APA, and members, managers and shareholders of the Legacy and, to the extent permitted by applicable law, any subsequent trustees appointed in Debtor's chapter 11 case or upon a conversion of chapter 7 under the Bankruptcy Code.

## Approval of APA

5. Pursuant to sections 363(b) and (f) of the Bankruptcy Code and the APA, Debtor is authorized and empowered to execute and deliver, perform under, consummate, implement and close fully the APA and each and every transaction contemplated by the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Sale.

6. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code and on the terms set forth in the APA and this Order, upon the Closing provided in the APA, the Acquired Assets shall be and hereby are deemed transferred and assigned to Purchaser effective as of 12:01 a.m. (Mountain Standard Time) on the Closing Date, free and clear of all liens, claims, encumbrances and interests arising or relating to the period prior to the Closing, with such liens, claims, encumbrances or interests, if any, against Debtor or its estate or the Acquired Assets, attaching to the proceeds to be received by Debtor under the APA, subject to the same priority and validity (and defenses and objections of Debtor and other parties in interest, if any, with respect thereto) as are presently existing against the Acquired Assets in which they allege such a lien, claim, encumbrance and/or interest.

7. Except as expressly permitted by the APA, (i) all persons and entities holding liens, claims, encumbrances or interests of any kind and nature accruing, arising or relating to a period prior to the Closing Date with respect to any Acquired Asset hereby are barred, estopped, and permanently

8

enjoined from asserting such liens, claims, encumbrances or interests against Purchaser or any of its affiliates, stockholders, members, managers, partners, parent entities, successors, assigns, officers, directors or employees, agents, representatives, and attorneys, or the Acquired Assets, and (ii) Purchaser shall have no liability or responsibility for any lien, claim, encumbrance or interest arising, accruing, or relating to a period prior to the Closing Date.

## **Additional Provisions**

8. The rent obligations to Fay Enterprises, Inc. pursuant to the Lease governing the Leasehold shall be prorated as of the Closing Date. Rent owed on the real and personal property occupied by the Debtor has not been paid for the months for August and September 2013, with approximately $134,000 of unpaid rent outstanding. The property owner (Fay Enterprises, Inc.) is holding a lease deposit of $100,000. On or before the Closing Date, Fay Enterprises will receive a payment of $67,000, *first*, from available monies on hand held by the Debtor; and *second*, to the extent there are insufficient monies on hand held by the debtor, from the lease deposit, and will have an allowed, unsecured, non-priority claim of $48,600 in this case.

9. No other Order entered in this Bankruptcy Case, including without limitation any Order regarding cash collateral, shall conflict with or derogate from the provisions of this Order. In the event of any conflict between this Order and any other Order entered in this Bankruptcy Case, this Order shall control.

10. Except as may be specifically set forth in the APA, Purchaser shall have no liability or responsibility whatsoever for any liability or other obligation of Debtor arising under or related to Debtor, its assets or the Acquired Assets (the "**Excluded Liabilities**"). Purchaser is acquiring the Acquired Assets free and clear of the Excluded Assets, and the Excluded Liabilities. Purchaser shall (i) not be liable for any claims or causes of action against Debtor or any of its agents, representatives or affiliates and (ii) have no successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to Debtor or any obligations of Debtor.

11. Notwithstanding the foregoing, nothing in this Order prevents the enforcement of the APA, including, without limitation, enforcement of Purchaser's and Sellers' obligations therein.

12. Debtor is hereby authorized, in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code, to (a) assume and assign to Purchaser, effective upon the Closing, Assigned Contracts, and/or to transfer, sell and deliver to Purchaser all of Debtor's right, title and interest in and to the Assigned Contracts, free and clear of all liens, claims, encumbrances and interests of any kind or nature whatsoever, and (b) execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to Purchaser.

13. This Court retains jurisdiction, even after closing this chapter 11 case, to the extent provided in the APA to:

    i. interpret, implement and enforce the terms and provisions of this Order and the terms of the APA, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith;

    ii. enter orders in aid or furtherance of the Asset Sale;

    iii. resolve any dispute arising under or related to the APA or the Asset Sale, or to ensure peaceful use and enjoyment of the Acquired Assets;

    iv. adjudicate any and all issues and/or disputes, if any, relating to Purchaser's or Debtor's right, title or interest in, to and under the Acquired Assets or the APA and related agreements;

    v. adjudicate all issues concerning prorations under the APA;

    vi. adjudicate any and all issues and/or disputes relating to Debtor's right, title or interest in the Acquired Assets and the proceeds thereof, the Sale Motion and/or the APA; and

    vii. re-open Debtor's chapter 11 case to enforce the provisions of this Order.

14. The consideration provided by Purchaser for the Acquired Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

15. Debtor has undertaken the Asset Sale in good faith (as that term is used in section 363(m) of the Bankruptcy Code), and Purchaser is and shall continue to be in good faith (as that term is used in section 363(m) of the Bankruptcy Code) by proceeding to close the Asset Sale. Accordingly, the reversal or modification on appeal of the authorization to consummate the Asset Sale approved hereby shall not affect the validity and enforceability of such Asset Sale, unless such

authorization is duly stayed pending such appeal. Purchaser is a good faith purchaser of the Acquired Assets and entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

16. Purchaser shall not be deemed to (a) have merged with or into Debtor; (b) be a mere continuation or substantial continuation of Debtor or the enterprise of Debtor; or (c) a successor of or to Debtor for any claim or interest against or in Debtor or Debtor's assets of any kind or nature whatsoever.

17. Nothing herein shall be deemed to prejudice or alter Purchaser's or Debtor's rights under the APA, including, without limitation, the conditions to Closing.

18. The provisions of Bankruptcy Rules 7062 and 6004(h) and 6006(d), imposing any stay on the effectiveness of this order, to the extent applicable, are hereby waived. Debtor and Purchaser may consummate the APA at any time after entry of the Order by waiving any and all closing conditions set forth in the APA that have not been satisfied and by proceeding to close the Asset Sale without any notice to the Court, any pre-petition or post-petition creditor of Debtor and/or any other party in interest.

19. This Order is effective immediately upon entry, notwithstanding the 14-day appeal period provided by Fed. R. Bankr. P. 8002 or any other stay provided by law.

20. The provisions of this Order are non-severable and mutually dependent.

DATED AND SIGNED ABOVE.

# EXHIBIT 1

# SECOND AMENDMENT TO
# ASSET PURCHASE AGREEMENT

**THIS SECOND AMENDMENT**, dated September 18, 2013, amends the Asset Purchase Agreement, as amended pursuant to the Amendments filed with the United States Bankruptcy Court in the case of *In re Casa de Capri Enterprises, LLC*, 2-13-14269-EPB at DE 81 (the "**APA**"),[1] between and among, Pointe Healthcare, LLC, Legacy Senior Housing and Development, LLC, and Casa de Capri Enterprises, LLC ("**Debtor**"). The amendments to the APA include the following:

Section 2.2    **Consideration.**

Section 2.2 of the APA is removed in its entirety and replaced as follows:

Purchaser agrees to pay Sellers the sum of Three Hundred Fifty Thousand Dollars ($350,000.00) (the "**Purchase Price**"), in consideration for the sale of the Facility.

Section 2.3    **Method of Payment.**

Section 2.3 of the APA is removed in its entirety and replaced as follows:

On the Closing Date, Purchaser or a title/escrow company chosen by Purchaser shall pay the Purchase Price to Debtor by wire transfer net of the tax payments payable to Fay Enterprises, Inc., pursuant to Section 7.4(a), in good and readily available funds.

Section 2.4    **Allocation of the Purchase Price.**

Section 2.4 of the APA is removed in its entirety and replaced as follows:

Intentionally omitted.

Section 7.4(a) **Real Property and Personal Property Taxes**

The first sentence (only) of this section is amended to state:

All real property and personal property taxes for 2013 and all real property assessments, including those owed to Fay Enterprises, Inc. under the Lease, shall be prorated as of the Closing Date.

Section 7.4(c) **Accounts Receivable**

Section 7.4(c) of the APA is removed in its entirety and replaced as follows:

---

[1] Unless otherwise defined herein, defined terms used herein shall have the same effect and meaning given to them in the APA.

All accounts receivable, specifically including cash grants and other third party reimbursements, accruing prior to the Closing Date ("**Debtor's Accounts Receivable**") shall be the property and responsibility of Debtor. All receivables arising for periods from and after the Closing Date shall be the property of Purchaser ("**Purchaser's Accounts Receivable**"). Each party agrees in the exercise of good faith and fair dealing to take any action with reasonable promptness which may be necessary or appropriate to carry out the intentions of the parties as reflected in this paragraph and **Schedule 7.4(c)** attached hereto, so that the accounts receivable of each party shall be delivered to the party entitled thereto under the terms hereof.

Purchaser shall have the right and duty to collect, on behalf of Debtor, Debtor's Accounts Receivable, subject to the following terms and conditions:

(1) Until Purchaser's right and duty to collect Debtor's Accounts Receivable terminates, Purchaser shall use its best efforts to collect Debtor's Accounts Receivable, including, the submission of claims for payment to payers and the prompt response to the requests of payers for additional information or coding.

(2) In consideration, Purchaser shall be paid a ten percent (10%) commission on all Debtor's Accounts Receivable that it actually collects.

(3) Purchaser shall have no obligation to initiate any litigation to collect Debtor's Accounts Receivable.

(4) Purchaser shall account for all collections of Debtor's Accounts Receivable and provide reports, as follows:

(a) Purchaser shall account for, segregate, and furnish reports separately for (i) Debtor's Accounts Receivable that arose prior to its bankruptcy case; and (ii) Debtor's Accounts Receivable that arose after the bankruptcy case and before the Closing Date.

(b) Purchaser shall make its accounting to the Debtor, the Official Committee of Unsecured Creditors in the Bankruptcy Case, and any party with an un-avoided and unpaid lien in Debtor's Accounts Receivable. For Debtor's Accounts Receivable that arose prior to the Bankruptcy Case, this includes Omnicare of Phoenix, Apheresis Care Group, Inc. d/b/a Phoenix Metro Inpatient Services, and Michelle Anderson. For Debtor's Accounts Receivable that arose after the filing of the Bankruptcy Case, the parties with a secured interest also includes Fay Enterprises, Inc.

(c) By the 15th of each month during the reporting period, Purchaser shall provide reports of the collection of Debtor's Accounts Receivable to the above-named persons. These reports shall include, at a minimum, details regarding all Debtor's Accounts Receivable collected during the reporting period and a description of any account receivable determined by Purchaser to be uncollectable ("**Uncollectable Account Receivable**") along with a brief description of the reasons that the Uncollectable Account Receivable was determined to

be uncollectable. Any report of an Uncollectable Account Receivable must be provided within ten (10) days after the account has been determined to be uncollectable.

(5) Purchaser's duty and right to collect Debtor's Accounts Receivable and to be paid a commission for the collection of those accounts, shall terminate at the earlier of the following:

(a) For any account that is determined to be uncollectable by Purchaser, immediately upon notice of such to Debtor; or

(b) As to any outstanding and uncollected Debtor's Accounts Receivable remaining in existence, the day that is twelve (12) months after the Closing Date.

(6) Purchaser's right to receive a commission terminates at the time that its right and duty to collect Debtor's Accounts Receivable terminates. These termination dates may only be extended pursuant to agreement of the Purchaser and further order of the Bankruptcy Court.

(7) The Purchaser will cooperate with Debtor, including providing Debtor with all necessary documents or information needed, so as to assist Debtor in the collection of any account determined by Purchaser to be an Uncollectable Account Receivable and after termination of Purchaser's duty and right to collect Debtor's Accounts Receivable.

3